United States District Court
District of Columbia

**AFFIDAVIT OF SPECIAL AGENT MARGARET CALLERY IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Your affiant, Margaret Callery, being duly sworn, hereby depose and state as follows:

**A. Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for certain accounts controlled by the free web-based electronic mail service provider known as MSN Hotmail headquartered at 1065 La Avenida, Mountain View, California 94043. The account to be searched is CARCOMUNICA@HOTMAIL.COM which is further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of MSN Hotmail, there exists evidence, fruits, and instrumentalities of violations of Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), Title 46, United States Code Appendix, Section 1903 (Manufacture, distribution and possession with intent to distribute controlled substances on board vessels) and Title 18, United States Code, Section 1956 (Laundering Monetary Instruments).

2. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I have been employed as a Special Agent with the DEA for approximately 13 years, during which time I have specialized in investigations involving narcotics trafficking. I received

1

fourteen (14) weeks of training at the DEA Academy at Quantico, Virginia, and have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities.

4. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.

5. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of a communication facility to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and MDMA, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

6. I have also conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested who later cooperated with the Government.

7. I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate various-sized narcotic enterprises via intelligence gathering, participation in consensual recordings and monitored purchases of controlled substances. I have executed

search warrants for controlled substances and I have conducted surveillance in connection with numerous narcotic investigations.

8. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including South and Central America and the Caribbean.

9. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

10. In my training and experience, I have learned that MSN Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for MSN Hotmail subscribers may be located on the computers of MSN Hotmail. Further, I am aware that computers located at MSN Hotmail contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

**B. Background Regarding Computers, the Internet, and E-mail**

11. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes

an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

**C. MSN Hotmail**

13. Based on my training and experience, I have learned the following about Hotmail :

a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with MSN Hotmail. MSN Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other

personal/biographical information. However, MSN Hotmail does not verify the information provided;

      b. MSN Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

      c. Subscribers to MSN Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

      d. Any e-mail that is sent to an MSN Hotmail subscriber is stored in the subscriber's "mailbox" on MSN Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by MSN Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on MSN Hotmail's servers indefinitely;

      e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to MSN Hotmail's servers, and then transmitted to its end destination. MSN Hotmail users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the MSN Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at MSN Hotmail, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

      f. An MSN Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by MSN Hotmail; and

      g. E-mails and image files stored on a MSN Hotmail server by a subscriber may

not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the MSN Hotmail server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the MSN Hotmail server.

**D. Stored Wire and Electronic Communication Access**

14. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

   a) Title 18, United States Code, Section 2703(a), provides:

   > A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

   b) Title 18, United States Code, Section 2703(b), provides, in part:

   > (1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
   >    (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
   > (2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
   >    (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
   >    (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to

access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter -
> (1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
> (2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means -
>> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

### E. Search Procedure

15. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of MSN Hotmail to assist agents in the execution of this warrant. To further

ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

    a. The search warrant will be presented to MSN Hotmail personnel who will be directed to isolate those accounts and files described in Attachment A;

    b. In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

    c. MSN Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

    d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

    e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail employees and will not further review the original duplicate absent an order of the Court.

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

### F. Basis for Facts Contained in this Affidavit

16. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

    a.    Oral and written reports about this investigation and others that I have received from United States and British law enforcement officers, including agents with Her Majesty's Customs and Excise and Special Agents of the Drug Enforcement Administration;

    b.    Physical surveillance conducted by DEA agents, British authorities or other foreign law enforcement authorities, which observations have been reported to me either directly or indirectly;

    c.    Intercepted e-mail messages;

    d.    Telephonic intercepts conducted by Brazilian and Dominican Republic authorities;

    e.    A review of log history and Internet Protocol addresses for e-mail accounts;

17. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

18. I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

19. Since October of 2003, British law enforcement authorities, in conjunction with the DEA and other foreign national law enforcement agencies, have been investigating a cocaine trafficking organization operating out of Colombia and Venezuela which is believed to be responsible for the shipment by maritime vessels of multi-hundred kilogram loads of cocaine to destinations in the United States and Europe. During the investigation, JOSE BLANCO-FERNANDEZ, a.k.a. LEONARDO, a.k.a. LEO (hereinafter, "BLANCO") was identified as the leader of this cocaine trafficking organization. To date, several maritime vessels have been intercepted at sea in the Caribbean or in the Atlantic Ocean and over 1,000 kilograms of cocaine have been seized from those vessels. Those vessels are connected to narcotics associates of BLANCO. In February of 2004, British authorities contacted members of the DEA in the Dominican Republic and advised that BLANCO intended to move his base of operations from Venezuela to the Dominican Republic. British authorities also provided the DEA with information concerning a cellular telephone used by BLANCO to conduct narcotics business. The number to that cellular telephone was subscribed to JOSE BLANCO-FERNANDEZ at Calle Salvador Sturla #31, Santo Domingo, Dominican Republic. On or about February 24, 2004, a court-authorized interception of that cellphone was initiated by Dominican law enforcement authorities. Calls intercepted over that phone indicated that BLANCO was discussing narcotics business with other individuals. Some of the intercepted communications pertained to multi-hundred kilogram shipments of cocaine.

20. On August 11, 2004, BLANCO and several other individuals were indicted in the District of Columbia as part of a historical conspiracy. The charges include violations of U.S. Code, Title 21, Section 959 (conspiracy to import cocaine into the United States). After the indictment, the investigation has continued into BLANCO's money laundering and narcotics activities.

21. During the course of this investigation, authorization has been obtained to intercept the electronic communications of several e-mail accounts used by BLANCO to conduct narcotics business. The Honorable Leonie M. Brinkema, U.S. District Court Judge for the Eastern District of Virginia, has previously authorized the interception of electronic communications over various e-mail accounts used by BLANCO, including CARCOMUNICA@HOTMAIL.COM, to conduct narcotics and money laundering business. A previous search warrant for the stored e-mails in the "CARCOMUNICA@HOTMAIL.COM" account was obtained from U.S. Magistrate Judge Facciola on September 13, 2004, in the U.S. District Court for the District of Columbia. Information from that search warrant was used to apply for authorization to intercept the electronic communications from that account. Interceptions terminated at the end of January of 2005 when BLANCO was arrested in Sao Paulo, Brazil on a currency reporting violation. BLANCO was apparently stopped at the airport and was found to have approximately $30,000 in Euros in his luggage. Under Brazilian law, amounts over $3,000 must be declared upon leaving the country. BLANCO did not declare the money which is believed to be narcotics proceeds.

22. We recently learned that BLANCO was released from custody in Brazil in May. We are currently trying to locate BLANCO and arrest him. We are also trying to determine if he is continuing to conduct narcotics business now that he is no longer incarcerated. As set forth in more detail below, records show that the CARCOMUNICA@HOTMAIL.COM account is actively being used. The search warrant sought herein is for stored e-mail messages and address

11

book information contained in that account. Letters have been sent to MSN Hotmail by the DEA requesting that the stored communications in the Target E-Mail account be preserved.

**CARCOMUNICA@HOTMAIL.COM**

23. The e-mail account named CARCOMUNICA@HOTMAIL.COM is subscribed to Juan Garcia Hernandez with no listed address. The account was established on October 27, 2004. No additional subscriber information was given. I note that Hotmail offers free e-mail accounts and does not verify subscriber names or addresses. Since the accounts are offered for free, no billing information is necessary and thus, names and addresses do not need to be verified. Based upon my experience with narcotics-related internet investigations, I am aware that narcotics traffickers often utilize such free services because it allows them to maintain anonymity and further allows them to create multiple accounts with ease and no expense. In this investigation, BLANCO has used at least 3 different Hotmail accounts during the course of the investigation to conduct his narcotics business.

24. Previously in this investigation, authorization was obtained from the Honorable Leonie M. Brinkema, U.S. District Court Judge for the Eastern District of Virginia, to intercept electronic communications from the e-mail account named CARCOMUNICA@HOTMAIL.COM. This account has been used by BLANCO to conduct narcotics and money laundering activity. For example, an intercepted e-mail dated October 27, 2004 reads as follows:

From: "juan garcia hernandez" <carcomunica@hotmail.com>
To: <riopirai@hotmail.com>
Sent: Wednesday, October 27, 2004 3:29 PM
Subject: hello

Friend, I spoke to Rico. I think he'll be visiting you to make a purchase and he has the transportation. We'll start with 40, I think in the direction of where he is right now and to our place with the same or a little more. You will stay and coordinate the dispatches. Doing do anything stupid, because it's not worth it. What I'm saying is that you shouldn't go back to doing the same kind of things. I told Rico 2200 because there are always some small extra expenses. You know what kind of things we've gone through. I'll let you know.

25. In this e-mail, I believe that the parties discussed the transportation of kilograms of cocaine. I believe the statement "he has the transportation" meant that their narcotics associate had the means to transport narcotics. I believe the reference to starting with "40" meant that they would try a test run of 40 kilograms of cocaine and that BLANCO was going to send "Rico" to "make a purchase." I further believe the reference to "2200" was to a cost of $2,200.

26. On July 25, 2005, MSN Hotmail provided requested log-on activity for the e-mail account named CARCOMUNICA@HOTMAIL.COM. Although this account was previously activated prior to September of 2004, I am informed by Hotmail that accounts that are not used for 90 days or more become inactive. This account was re-activated on April 28, 2005 with the same subscriber information. It was re-activated from an IP address located in Sao Paulo, Brazil. Log-on activity showed 222 log-ons between April 28, 2005 and July 25, 2005. The log-on IP addresses also show that this account was accessed from IP addresses located in Sao Paolo, Brazil and Argentina. We have information that BLANCO's girlfriend, Azina Agripidakis, was in Argentina in June of 2005. Thus, Blanco may have traveled to Argentina to meet with her or he might have given her the password to his e-mail account so that they could communicate using the account as a "message board." Based upon the number of log-ins, I believe that BLANCO is using the e-mail account to communicate with others and that the account will

contain stored e-mails demonstrating usage for narcotics-related and money laundering business. The stored e-mails may also provide information regarding the current location of BLANCO that could help to find him and arrest him.

27. Based upon your affiant's training and experience as an agent with the DEA, your affiant knows that drug traffickers frequently communicate with each other by means of the internet and e-mail. It is the experience of your affiant that drug traffickers do not use their true identities or their correct addresses, especially if they are trying to avoid law enforcement detection.

28. Your affiant believes that the contents of the above-mentioned e-mail account will contain valuable information that will enable law enforcement to further the investigation against this major drug trafficking organization, corroborate existing information, identify potential defendants not presently known to your affiant, as well as to identify the structure of the organization, and will help to locate BLANCO.

**H. Conclusion**

29. Based upon the information above, your affiant believes that probable cause exists that on the computer systems owned, maintained, and/or operated by MSN Hotmail headquartered at 1605 La Avenida, Mountain View, California 94043 there exists evidence, fruits, and instrumentalities of violations of Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), Title 46, United States Code Appendix, Section 1903 (Manufacture, distribution and possession with intent to distribute controlled substances on board vessels), and Title 18, United States Code, Section 1956 (Laundering Monetary Instruments). By this affidavit and application, I request that the Court

issue a search warrant directed to MSN Hotmail to allow agents to seize e-mail, attachments and other information (described in Attachment A, part II) stored on the MSN Hotmail servers for the computer accounts and files, and following the search procedure described in Attachment A, part I.

## I. Request for Sealing

30. Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and the attachment thereto be filed under seal until further order of this Court, and directing MSN Hotmail not to disclose to the subscriber(s) or any other person the existence of the same application, affidavit, search warrant and attachment, until directed to do so by the Court..

_____
Margaret Callery
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this _____ day of August, 2005.

AUG 01 2005

_____
U.S. Magistrate Judge
ALAN KAY
U.S. MAGISTRATE JUDGE